**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:23-cv-03006-SKC-MDB

UNITED STATES OF AMERICA *ex rel.* AIDAN K. PETERS,

    Relator and Plaintiff,

          v.

PERDOCEO EDUCATION CORPORATION, a Delaware corporation;
COLORADO TECHNICAL UNIVERSITY, INC., a Colorado corporation;
CEC EMPLOYEE GROUP, LLC, a Delaware limited liability company; and
DOES 1-500, Inclusive,

    Defendants.

---

**MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT BY
DEFENDANTS PERDOCEO EDUCATION CORPORATION, COLORADO
TECHNICAL UNIVERSITY, INC., AND CEC EMPLOYEE GROUP, LLC**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................... 1

ARGUMENT .............................................................................................................. 3

    I.      RELATOR'S FCA *QUI TAM* CLAIMS MUST BE DISMISSED ............ 3

          A.     The FCA's Public Disclosure Bar Mandates Dismissal ............... 3

          B.     The FCA's Government Action Bar Compels Dismissal.............. 9

          C.     The *Qui Tam* Claims Fail to Meet Pleading
               Requirements............................................................................ 12

    II.     RELATOR FAILS TO STATE A RETALIATION CLAIM ................... 14

CONCLUSION.......................................................................................................... 15

CERTIFICATION RE: USE OF GENERATIVE ARTIFICIAL
INTELLIGENCE (AI) FOR DRAFTING .................................................................... 17

CERTIFICATION OF CONFERRAL ...................................................................... 18

CERTIFICATE OF SERVICE.................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Bahrani v. Conagra, Inc.*,
  624 F.3d 1275 (10th Cir. 2010) ............................................................................. 8

*United States ex rel. Bennett v. Biotronik, Inc.*,
  876 F.3d 1011 (9th Cir. 2017) ............................................................................. 11

*United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*,
  496 F.3d 1169 (10th Cir. 2007) ............................................................................. 3

*United States ex rel. Brooks v. Stevens-Henager College, Inc.*,
  359 F. Supp. 3d 1088 (D. Utah 2019) ................................................................. 12

*United States ex rel. Chumba v. Encompass Health Corp.*,
  No. 20-2513-DDC-RES, 2023 U.S. Dist. LEXIS 57532, 2023 WL
  2734231 (D. Kan. Mar. 31, 2023) ........................................................................ 15

*United States ex rel. Estate of Gadbois v. PharMerica Corp.*,
  292 F. Supp. 3d 570 (D.R.I. 2017) .................................................................. 11-12

*United States ex rel. Fine v. Sandia Corp.*,
  70 F.3d 568 (10th Cir. 1995) ................................................................................. 3

*Found. For Fair Contracting, Ltd. v. G & M E. Contracting & Double E, LLC*,
  259 F. Supp. 2d 329 (D.N.J. 2003) ...................................................................... 12

*FTC v. Romero*,
  658 F. Supp. 3d 1129 (M.D Fla. 2023) ................................................................ 10

*United States ex rel. Heron v. Nationstar Mortg., LLC*,
  No. 21-1362, 2024 U.S. App. LEXIS 20309, 2024 WL 3770843 (10th
  Cir. Aug. 13, 2024) ................................................................................................. 8

*Knight v. Mooring Capital Fund, LLC*,
  749 F.3d 1180 (10th Cir. 2014) ........................................................................... 14

*United States ex rel. Lemmon v. Envirocare of Utah, Inc.*,
  614 F.3d 1163 (10th Cir. 2010) ........................................................................... 13

*Lockheed Martin Corp. v. Admin. Review Bd., United States Dept. of Labor*,
  717 F.3d 1121 (10th Cir. 2013) ........................................................................... 14

*United States ex rel. Reed v. KeyPoint Gov't Sols.*,
    923 F.3d 729 (10th Cir. 2019) ................................................................. 1, 3, 8, 9, 14

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
    472 F.3d 702 (10th Cir. 2006) .............................................................................. 12

*United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co., Inc.*,
    48 F.4th 1146 (10th Cir. 2022)............................................................................ 15

*United States v. CSL Behring, L.L.C.*,
    855 F.3d 935 (8th Cir. 2017) ................................................................................. 8

*United States ex rel. Wagaman v. Glob. Med. Response, Inc.*,
    No. 19-cv-02575-RBJ, 2023 U.S. Dist. LEXIS 250779, 2023 WL
    12188421 (D. Colo. Nov. 20, 2023)....................................................................... 13

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
    827 F.3d 201 (1st Cir. 2016)................................................................................... 8

**Statutes**

31 U.S.C. §§ 3729-3733.............................................................................................*passim*

31 U.S.C. § 3730(e)(3) ................................................................................. 2, 10, 12

31 U.S.C. § 3730(e)(4)(A) ........................................................................... 2, 3, 4, 8

31 U.S.C. § 3730(e)(4)(B) ..................................................................................... 9

31 U.S.C. § 3730(h) ......................................................................................... 2, 14

31 U.S.C. § 3730(h)(1).......................................................................................... 14

**Rules**

Fed. R. Civ. P. 8(a) .......................................................................................... 2, 12

Fed. R. Civ. P. 9(b) .......................................................................................... 2, 12

Fed. R. Civ. P. 12(b)(6)........................................................................................ 12

Defendants Perdoceo Education Corporation, Colorado Technical University, Inc., and CEC Employee Group, LLC ("Defendants") respectfully move to dismiss this action, with prejudice, for the reasons provided below.

## INTRODUCTION

Aidan Peters ("Relator") filed this action on November 13, 2023, pursuant to the *qui tam* provisions of the civil False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"). Relator's core allegations pertain to Defendants' years-long participation in the Title IV program administered by the U.S. Department of Education. Defendants operate an open enrollment university that offers programs to students seeking flexible learning environments, such as students who are earning degrees while fully employed or returning to school to fill an education gap. According to Relator, Defendants violated federal law by making misrepresentations to prospective students and compensating admission advisors based on student enrollment targets.

After investigating Relator's FCA allegations, the United States filed its notice of non-intervention, and, on November 10, 2025, the Court unsealed the action (ECF 20). Relator filed his First Amended Complaint on January 8, 2026 (ECF 25) ("Complaint" or "AC"), pursuing the same core allegations.

As the Tenth Circuit has made clear, "there are limits to a relator's right to bring a *qui tam* suit," *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 736 (10th Cir. 2019), and two such limits—express statutory bars—apply here. First, because the allegations underpinning Relator's *qui tam* claims were publicized prior

1

to suit—largely lodged by critics of for-profit colleges—and thus afforded the Government the opportunity to discover them, the claims based on those allegations are precluded by the "public disclosure bar," 31 U.S.C. § 3730(e)(4)(A).  Second, and independently, the *qui tam* claims must be dismissed under the "government action bar," 31 U.S.C. § 3730(e)(3), because they are based on allegations or transactions that the Government itself raised in a 2019 federal court civil suit.  In fact, pursuant to an order entered in that action, the Government considered Relator's exact allegations against Defendants, including through its evaluation of an Independent Administrator report that specifically analyzed and debunked Relator's claims.

Even if these statutory bars did not apply, dismissal still would be warranted due to Relator's failure to plead with the plausibility and particularity required by Federal Rules of Civil Procedure 8(a) and 9(b).  Relator's portrayal of a widespread, years-long scheme to improperly compensate admissions advisors rests on snippets of two isolated and ambiguous conversations lacking any connection to any claim to the Government.

Finally, Relator's personal claim under 31 U.S.C. § 3730(h), alleging retaliation, also must be dismissed.  Relator does not and cannot plead the elements of that cause of action, including because he does not properly allege that he engaged in "protected conduct," as Section 3730(h) requires.

Relator's claims are statutorily barred and fail to state a claim.

2

## ARGUMENT

I.    **RELATOR'S FCA *QUI TAM* CLAIMS MUST BE DISMISSED**

A.    **The FCA's Public Disclosure Bar Mandates Dismissal**

The FCA public disclosure bar provides, in pertinent part, that:

> The court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless . . . the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).  Dismissal is required here because substantially the same allegations were publicly disclosed, and Relator is not an original source.

In deciding whether substantially the same allegations have been disclosed, "the operative question is whether the public disclosures were sufficient to set the government 'on the trail of the alleged fraud.'"  *Reed*, 923 F.3d at 744-45 (quoting *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995)).  This standard—easily met here—"does not require '*complete* identity of allegations.'" *Id.* at 752 (10th Cir. 2019) (quoting *United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1174 (10th Cir. 2007)).  "[I]t is enough if the relator's complaint is at least in part substantially the same as the publicly disclosed information."  *Id.* (cleaned up).

Stripped of rhetoric and recitations of regulations and standards governing

higher education institutions receiving Title IV funding, the factual allegations in Relator's complaint distill to the following: Since at least June 2016, Defendants—including through admissions advisors who were improperly incentivized to satisfy enrollment targets—made various misrepresentations to prospective students. This conduct violated conditions of participation with the Department of Education and rendered Defendants ineligible to receive Title IV federal funding. *See generally* AC.

These same core allegations appear in numerous qualifying pre-suit public disclosures, triggering the bar and mandating dismissal of this action. While Defendants identify and attach over 100 public disclosures, a July 2014 Courthouse News article entitled "Profit-Seeking College Likened to Boiler Room"[1] (attached as Exhibit 1) alone satisfies the standard.[2] The article details the allegations in *Thomas v. Colorado Technical University*, a lawsuit filed by former CTU admissions advisors (the same position held by Relator, *see* AC ¶ 12). The following excerpt demonstrates the allegations reported are "substantially the same" as those alleged by Relator:

> Colorado Tech University trained admissions officers to work in a boiler-room atmosphere and lure prospective students with misleading promises . . . The plaintiffs claim the school's admissions department was a "high-pressure, incentive-driven sales department" and violated federal regulations mandating that no admissions employee be given a commission bonus based on student enrollment. . . . "CTU's recruitment process and educational model is no more than a Title IV scam whereby CTU

---

[1] This article and the other articles discussed herein are qualifying disclosures under the "news media" category of 31 U.S.C. § 3730(e)(4)(A).

[2] The accompanying declaration of Jennifer Wollenberg indexes the publicly-disclosed documents, of which this Court may take judicial notice.

4

incentivizes, instructs and pressures admissions representatives to employ knowing misrepresentations of fact and high-pressure sales tactics in order to enroll as many students as possible so that CTU can obtain millions of dollars in Title IV funds," the complaint states.

Ex. 1.[3]

Beyond disclosing Relator's core allegations, which is sufficient for application of the bar, this article discloses details matching Relator's pleading. For example, the *Thomas* plaintiffs claimed the admissions group was a "high-pressure, incentive-driven sales department" where promotions were based on enrollment numbers. Ex. 1; *compare with* AC ¶¶ 94, 99 (alleging that an admission advisor at CTU "was actually a high-pressure sales position in disguise" and that "if [a recruiter] wanted to earn a promotion to one of the higher recruiting tiers and make more money, [they] had to enroll more students"). The article describes the *Thomas* allegations that advisors were directed to sell the program via deceptive statements regarding "how [prospective students] only could achieve their dreams of high salaries, nice houses and fancy cars by enrolling in CTU." Ex. 1; *compare with* AC ¶¶ 108, 111 (alleging that CTU gathered "information gleaned about [a prospective student's] goals, what they are afraid of concerning going to college, and what they hoped to accomplish by attending school" and then used this information to "emotionally pressure them into doing so"). And the article describes the *Thomas* allegations that advisors were

---

[3] The complaint filed in *Thomas* would have provided the Government with additional details regarding the alleged fraud. A copy of that complaint is provided as Exhibit 2, with allegations that are similar to those now made by the Relator highlighted.

5

instructed and incentivized to "employ knowing misrepresentations of fact and high-pressure sales tactics in order to enroll as many students as possible." Ex. 1; *compare with* AC ¶ 107 (alleging that CTU recruiters would create a "false sense of urgency" with the hope of "manipulat[ing] prospective students into rash decisions to enroll.").

Beyond this article, which itself is sufficient to bar Relator's suit, there are numerous others. Public allegations against for-profit colleges—often made by detractors who regularly (and unfairly) criticized such institutions—were commonplace prior to Relator's suit, including ones specifically targeting Defendants and raising substantially the same allegations as those in Relator's pleading.

A 2018 article describes an earlier non-intervened *qui tam* suit with strikingly similar allegations to the ones Relator is now making:

> [The] lawsuit alleges that EduTrek and its client for-profit colleges [including Career Education Corporation[4]] violated the Department of Education's ban on paying college recruiters a sales commission for signing up students – a provision aimed at deterring colleges from high pressure and deceptive sales tactics. Many for-profit colleges get 80 percent, 90 percent, or more of their revenue from taxpayer-funded student grants and loans, and cashing those checks while violating federal laws can give rise to whistleblower suits under the federal False Claims Act. . . . The complaint alleges that most of the people called by EduTrek recruiters "do not actually have an interest in attending college," so call center employees will ask prospective students "about their hobbies, general interests, and desired careers and then suggest degree programs and areas of study based on these responses." In addition, "EduTrek's Recruiters are instructed and trained to steer prospective students to programs offered by Defendant Schools. If a prospective student says that she wants to study a

---

[4] Perdoceo Education Corporation was formerly known as Career Education Corporation or "CEC." AC ¶ 18.

6

> subject not offered by one of the Defendant Schools, Recruiters
> are trained to re-direct the prospective student to an area of study
> offered by one of the Defendant Schools."

Ex. 3.[5]

And articles from June 2020 and February 2021 likewise publicly disclosed

substantially the same allegations:

> [E]gregious recruiting abuses at the company's two schools, AIU
> and CTU, are still happening. . . [Recruiters'] supervisors
> relentlessly pressured them to aggressively push people into low-
> quality college programs — often pitting recruiters against each
> other in a struggle to keep their jobs. . . . The goal is always to get
> the student to enroll and attend two classes.  [Then] Perdoceo can
> bank the students' federal grants and loans.
>
> ***
>
> [Recruiters'] bosses expected them to sign up at least eight new
> students per month . . . [T]he prospective students on the other
> end of the phone tend to be low-income, or single parents, or older
> people on Social Security and disability, or people who have had
> strokes and seizures, or a homeless man living in his car, or
> people with serious intellectual disabilities, or people who can't
> read, or immigrants who speak little English. . . . None of this
> predatory playbook is written down anymore, likely because
> companies were caught in the past; now at Perdoceo schools it's
> all told to staff orally.

Ex. 5; Ex 6.  These articles not only summarize the same core allegations found in

Relator's later-filed suit, but they also contain matching descriptions.  *Compare, e.g.*,

Ex. 6 (claim that Perdoceo was "enrolling homeless students without computers")

*with* AC ¶¶ 117, 165 (alleging that Defendants' lead generators "would transfer the

recruiters leads who were . . . homeless" and "without a computer and misled they

---

[5] Attached as Exhibit 4 is the *qui tam* complaint identified in this article, with
allegations that are similar to those now made by the Relator highlighted.

could get one from CTU" and alleging that "[f]or example, D.J. was homeless at the time Relator tried to recruit him and did not have a laptop").

Beyond these disclosures and the public disclosures concerning the Government action described in Section I.B. below,[6] each of which triggers application of the public disclosure bar, various other qualifying disclosures (*e.g.*, articles, congressional testimony) cover the waterfront of Relator's allegations and, as such, also call for dismissal under this statutory bar.[7]   Defendants attach 102 additional public disclosures (with certain passages containing allegations substantially similar to those in Relator's pleading highlighted).  Exs. 11-112.

Based on these public disclosures, the burden shifts to Relator to establish that he is an "original source."   *See United States ex rel. Bahrani v. Conagra, Inc.*, 624 F.3d 1275, 1285 (10th Cir. 2010).  Relator cannot meet his burden.

The FCA defines "original source" as follows:

> an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or

---

[6] Exs 7-10.  As a federal civil hearing in which the Government is a party, this is a qualifying public disclosure under 31 U.S.C. § 3730(e)(4)(A).

[7] The bar applies whether the information appears in a single disclosure or is spread across several disclosures.  *See, e.g.*, *United States ex rel. Heron v. Nationstar Mortg., LLC*, No. 21-1362, 2024 U.S. App. LEXIS 20309, at *16 (10th Cir. Aug. 13, 2024); *Reed*, 923 F.3d at 749; *United States v. CSL Behring, L.L.C.*, 855 F.3d 935, 944 (8th Cir. 2017); *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016).

> transactions, and who has voluntarily provided the information
> to the Government before filing an action under this section.

U.S.C. § 3730(e)(4)(B).  Relator does not fall within the first prong of the original source definition because the identified public disclosures pre-date when he provided information to the Government.  *See* AC ¶ 16 (alleging provision of information in "May and July 2021").  Nor can Relator credibly claim original source status under the second prong because background information, details, or additional examples are not material additions.  *See, e.g.*, *Reed*, 923 F.3d at 757 (10th Cir. 2019).[8]  Notably, Relator's conclusory "original source" assertion in his Complaint alleges only that he has "material" knowledge, AC ¶ 16, not that his knowledge "materially adds to" the publicly disclosed information, which is the standard under 31 U.S.C. § 3730(e)(4)(B).  *Id.* at 759 (a relator must provide information that "materially adds value").[9]

Because Relator's allegations were publicly disclosed and Relator is not an original source, this action must be dismissed.

### B.    The FCA's Government Action Bar Compels Dismissal

Independent of the public disclosure bar, the FCA's government action bar mandates dismissal of Relator's action.  This statutory bar—for which there is no

---

[8] Relator's allegation of an "interrelated network of companies" among Perdoceo entities would defeat any claim that Relator materially added to the publicly-disclosed information by naming particular Perdoceo entities.  AC ¶ 27.  And this "common enterprise" allegation itself was previously publicly disclosed.  Ex. 9 ¶ 10.

[9] Relator also would need to establish that he "voluntarily" provided the information to the Government, but any such assertion would contradict his allegation that the Government "request[ed]" the information.  AC ¶ 13.

9

"original source" exception—states:

> In no event may a person bring [a *qui tam* action] which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

31 U.S.C. § 3730(e)(3).  The bar applies here due to a prior Government suit against Defendants—namely, *FTC v. Career Educ. Corp., et al.*, ECF No. 1, 1:19-cv-5739 (N.D. Ill.) ("FTC Action").  In that civil suit, which sought monetary penalties and other relief, the Government's[10] complaint alleged—as Relator does here—that Perdoceo entities made misrepresentations to prospective students.  Ex. 9.  Indeed, allegations in the FTC Action match ones in Relator's suit.  Both actions allege deception by Defendants' "lead generators."  *See, e.g.*, Ex. 9 ¶¶ 12, 21-43; AC ¶¶ 116-128, 138-139, 187, 213.  Both actions allege Defendants' employees worked in a "high pressure" sales environment that required the meeting of enrollment quotas, which led to manipulating and making misrepresentations to prospective students.  *See, e.g.*, Ex. 9 ¶¶ 20, 59-60; AC ¶¶ 94-97; 181-182.  And the FTC's allegation that Perdoceo entities "have accepted federal and military financial aid," Ex. 9 ¶ 17, aligns with Relator's allegations about Defendants' receipt of federal funds, *see, e.g.*, AC ¶ 7.[11]

---

[10] The FTC is a Government agency.  *FTC v. Romero*, 658 F. Supp. 3d 1129, 1134 (M.D. Fla. 2023).

[11] Both suits also allege Perdoceo entities targeted and misled certain demographics, including the military.  *See, e.g.*, Ex. 9 ¶¶ 12-13, 19, 25, 38;  AC ¶¶ 129, 133, 142, 149.  And, in what is unlikely a mere coincidence, both the 2019 FTC Action and Relator's later-filed Complaint include the ***exact same language*** when alleging joint and several liability.  Ex. 9 ¶ 10; AC ¶ 27.

10

The stipulated order ("Order") filed in the FTC Action further evidences the overlapping allegations.  Ex. 10.  In fact, the Order includes a "Prohibition Against Misrepresentations" section.  *Id*. at 6-7.

Further confirming the similarity of the allegations in the two actions, Relator's exact allegations fell within the scope of the FTC Action.  In fact, in 2021, two years before he commenced his *qui tam* suit, Relator alleges that he presented his allegations to a number of state and federal government representatives and agencies, *including the FTC*.  AC ¶ 13, 16.  Relator's vehicle for making his allegations included a declaration dated July 2021.  *Id*.  Pursuant to the Order in the FTC Action, the FTC received not only Relator's declaration, but the report of the Independent Administrator who was looking into issues "similar to the issues identified in this Complaint," AC ¶ 245, which report specifically refutes Relator's allegations.[12]

The overlap with the FTC Action mandates dismissal of Relator's action.  *See, e.g., United States ex rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011, 1015 (9th Cir. 2017) (affirming dismissal on government action bar grounds); *United States ex rel. Estate of Gadbois v. PharMerica Corp.*, 292 F. Supp. 3d 570, 580 (D.R.I. 2017) ("Where the Government already has been [a] party to a suit based on the same allegations,

---

[12] Relator's Declaration and the Administrator's Report are attached hereto as Exhibits 113 and 114.  The Administrator's Report describes a "years-long, exhaustive independent review" of Relator's allegations, which resulted in this finding repeatedly being made: "we do not find a pattern or practice, nor do we find indicia, of substantial non-compliance."  Ex. 114.  The attached declaration of Daniel Savrin confirms that Exhibits 113 and 114 were provided to the Government pursuant to the Order in the FTC Action.

the Government is clearly capable of pursuing the suit itself."); *Found. For Fair Contracting, Ltd. v. G & M E. Contracting & Double E, LLC*, 259 F. Supp. 2d 329, 339 (D.N.J. 2003) ("[P]laintiff's suit seeks to remedy fraud that the government has already investigated within its full regulatory authority").

Accordingly, FCA § 3730(e)(3) bars this *qui tam* action.

### C.     The *Qui Tam* Claims Fail to Meet Pleading Requirements

The Complaint not only must satisfy the plausibility requirement of Rule 8(a), but because it is "alleging violations of the False Claims Act[, it] must also satisfy the heightened pleading standard of Rule 9(b) . . . [by alleging] the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Brooks v. Stevens-Henager College, Inc.*, 359 F. Supp. 3d 1088, 1103 (D. Utah 2019) (quoting *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006)). The Complaint does not meet these pleading requirements and thus fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

In a 250-plus paragraph pleading, it is notable that Relator's incentive compensation ban allegations—under the heading "Defendant Schools Violated the Incentive Compensation Ban"—comprise only eleven paragraphs.  AC ¶¶ 93-103. And those few paragraphs—which purport to describe a multi-entity, multi-year, widespread scheme of incentive compensation ban violations—rest on allegations of two isolated and unconvincing conversations.  AC ¶ 99 (alleging that "[e]arly on," his

12

supervisor explained that to be promoted, Relator had to enroll more students)[13];

¶ 101 (alleging a "[p]retty much" response by one director in November 2020).

Beyond the fact that there are only two such allegations from Relator's over

four years of employment and both are less than definitive, there are no allegations

tying these conversations to a false claim for payment to the Government. These

isolated, ambiguous encounters between a discrete number of individuals do not

plausibly and particularly allege a pervasive, widespread fraudulent scheme across

multiple entities for nearly a decade. *See United States ex rel. Lemmon v. Envirocare*

*of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (describing that parties are

required to plead the "specifics of a fraudulent scheme and provide an adequate basis

for a reasonable inference that false claims were submitted as part of that scheme");

*United States ex rel. Wagaman v. Glob. Med. Response, Inc.*, No. 19-cv-02575-RBJ,

2023 U.S. Dist. LEXIS 250779 at *33  (D. Colo. Nov. 20, 2023) ("More importantly,

given the questions surrounding [the two examples in the complaint], it is difficult to

credit them as examples of a 'routine' fraudulent scheme.").

Relator's claim does not pass pleading muster and must be dismissed.[14]

---

[13] This allegation not only appears to conflict with Relator's allegation that he was
told something different when he "was first interviewed and hired on,"  AC ¶ 93, but
also is followed by Relator's admission that the same supervisor later suggested that
promotion would depend "on the time [Relator] had been there."  AC ¶ 99.

[14] Relator already had an opportunity to amend his complaint and, in so doing, altered
the incentive compensation ban allegations. *See* ECF 25-1 at ¶¶ 93-103 (showing
changes to the allegations made in the original complaint).  As a result, dismissal on

## II.    RELATOR FAILS TO STATE A RETALIATION CLAIM

Relator has failed to state a personal claim for retaliation under 31 U.S.C. § 3730(h), which requires a showing that (1) Relator engaged in protected conduct, (2) Defendants were on notice of that conduct, and (3) Defendants retaliated against him because it. *Reed*, 923 F.3d at 764. None of these elements is satisfied.

Each element of this cause of action requires Relator to have engaged in protected conduct—*i.e.*, "'lawful' acts 'in furtherance of' *either* 'an action' under the [False Claims ] Act 'or other efforts to stop 1 or more violations of the [False Claims] Act.'" *Id.* at 738 (quoting § 3730(h)(1)). The Complaint includes no such allegation. Relator does not allege that he was fired, but instead admits that he left his employment of his own accord[15] because "in good conscience," he "could no longer participate in defrauding students." AC ¶¶ 95, 248. Relator alleges that he "voic[ed] his concerns about CTU's recruiting practices," "refused to engage in the deceptive practices any longer," and "attempted repeatedly in good faith to insist that CTU live up to its commitments to abide by the [multistate] settlement agreements." AC ¶¶ 245, 248. Those allegations do not suffice. Under the FCA, retaliation must be tied to concerns about defrauding the federal government, not about defrauding private persons, violating a settlement agreement with a state, or simply not complying with

---

this ground also should be with prejudice. *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014).

[15] Given his voluntary resignation, Relator has the additional burden of proving the alleged "constructive[] discharge," AC ¶ 95, 130. *Lockheed Martin Corp. v. Admin. Review Bd., United States Dept. of Labor*, 717 F.3d 1121, 1133 (10th Cir. 2013).

14

a law or regulation.  Because Relator does not allege that he raised any concerns about federal funding implications, much less fraud on the Government or potential FCA violations, his retaliation claim fails.  *See, e.g., United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co.*, Inc., 48 F.4th 1146, 1160 (10th Cir. 2022) (rejecting notion that "merely informing an employer it is not complying with a statutory, regulatory, or contractual requirement—whether through ignorance, by accident, or with intent—is enough to establish a nexus to the FCA," as this would effectively incorporate the FCA "into the entire body of the federal statutory and regulatory code"); *United States ex rel. Chumba v. Encompass Health Corp.*, No. 20-2513-DDC-RES, 2023 U.S. Dist. LEXIS 57532, at \*46  (D. Kan. Mar. 31, 2023) (dismissing retaliation claim when complaint provided "no facts supporting a plausible inference that the incident report alleged anything about fraudulent billing, false claims to the government, or anything else suggesting that relator was complaining about or trying to stop FCA violations").

Relator fails to plead the necessary elements to support his claim of retaliation.

## CONCLUSION

For the foregoing reasons, Defendants request that the Motion be granted and the action be dismissed with prejudice.

Dated:        March 16, 2026        By: */s/ Douglas W. Baruch*

Douglas W. Baruch
Jennifer M. Wollenberg
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
Telephone:  +1.202.739.3000
Fax:  +1.202.739.3001
douglas.baruch@morganlewis.com
jennifer.wollenberg@morganlewis.com

*Attorneys for Defendants*

16

## <u>CERTIFICATION RE: USE OF GENERATIVE ARTIFICIAL INTELLIGENCE (AI) FOR DRAFTING</u>

I hereby certify that no portion of this filing was drafted by AI.

<u>*/s/Douglas W. Baruch*</u>
Douglas W. Baruch

17

## <u>CERTIFICATION OF CONFERRAL</u>

Pursuant to the District of Colorado Local Rules of Civil Practice, I certify that I made a good-faith effort to confer with Relator's counsel regarding this Motion.

On March 10, 2026, the parties met and conferred regarding this Motion. Counsel for Defendants provided an overview of the arguments that would be raised in this Motion.  Upon hearing the grounds for this Motion, Relator did not agree to withdraw any aspect of the Complaint.  This Motion is opposed.


*/s/    Douglas W. Baruch*
Douglas W. Baruch

18

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I electronically filed the foregoing

Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will

automatically email notification of such filing to all counsel of record.


*/s/ Douglas W. Baruch*

Douglas W. Baruch
